Richard M. Wirtz (SBN 137812)[1]
W I R T Z  L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice:       858.259.5009
fax:         858.259.6008
email:       rwirtz@wirtzlaw.com

Christopher M. Young, Esq. (SBN 7961)
The Cobeaga Law Firm
550 East Charleston Blvd., Suite D
Las Vegas, NV  89104
(702) 240-2499, telephone
(702) 240-2489, facsimile
cyoung@cotomlaw.com

Attorneys for Plaintiff TODD NELSON

# UNITED STATES DISTRICT COURT,

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD NELSON, an individual, <br><br>     Plaintiff, <br><br> vs. <br><br> FLUOROPHARMA MEDICAL, INC., a Nevada Corporation; and DOES 1 through 10, inclusive; <br><br><br>     Defendant. | Case Number: <br><br> **COMPLAINT FOR:** <br><br> **1.   BREACH OF CONTRACT** <br> **2.   BREACH OF COVENANT OF** <br>       **GOOD FAITH AND FAIR DEALING** <br> **3.   10b-5 SECURITIES FRAUD** <br> **4.   CONSTRUCTIVE FRAUD** <br> **5.   CONVERSION** <br><br> <u>**JURY DEMAND**</u> |

Plaintiff TODD NELSON ("Plaintiff") alleges as follows:

## JURISDICTION

1.     This action arises under the SEC Rule 10b-5, codified at 17 C.F.R. 240.10b-5 of the Securities Exchange Act of 1934, as hereinafter more fully appears. The jurisdiction of this

---

[1]Pursuant to LR IA 10-2(c) & (e), this attorney will comply with LR IA 10-2 within 45 days

court is founded on 28 USC §§ 1331 and §1332. Venue is proper in this district under 28 USC § 1391(b)(1) because this is where the Defendant resides.

2.      This Court has personal jurisdiction over Defendant because, on information and belief, Defendant is incorporated and existing under the laws of Nevada.

3.      Plaintiff is an individual, residing in San Diego County, California.

4.      Plaintiff alleges on information and belief that at all relevant times Defendant Fluoropharma Medical, Inc. ("FMI" or "Defendant"), is and was a corporation organized and existing under the laws of Nevada.

5.      Plaintiff is ignorant of the true names and capacities of Defendants sued as Does 1 through 10, inclusive, and therefore sues such Defendants by such fictitious names.  Any reference in this complaint to the conduct or inaction of any Defendant or all Defendants, whether reference is made to such Defendant(s) by specific name or otherwise, is also a reference to the conduct or inaction of Does 1 through 10, inclusive.  Plaintiff will amend this complaint to allege true names and capacities of Does 1 through 10, inclusive, when ascertained.

6.      Plaintiff alleges on information and belief that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were legally and proximately caused by such Defendants.

**GENERAL ALLEGATIONS**

7.      Plaintiff is a founder of Fluoropharma, Inc. ("Fluoropharma"), Defendant's predecessor-in-interest.     On May 11, 2011, a reverse merger occurred and Fluoropharma became Defendant Fluoropharma Medical, Inc. ("FMI").

8.      From February 28, 2005, until October 2009, Plaintiff served on Fluoropharma's Board of Directors.  Plaintiff is an experienced investor who has significant experience in the creation, implementation, adoption and management of option plans, having been a CEO of several large operating companies.

9.      FMI is a publicly traded corporation, engaged in the nationwide development and sale of medical diagnostic imaging products.

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

10.     Plaintiff and Defendant signed an written agreement dated February 28, 2005, in which, in exchange for Plaintiff's services as a member of the Board of Directors of Fluoropharma, Plaintiff was granted stock options at an exercise price of $.20 per share to purchase 200,000 shares of Fluoropharma ("Letter Agreement"). A copy of the letter agreement is attached as **Exhibit 1** and incorporated by this reference.

11.     The Letter Agreement sets out the terms of the Parties' agreement, including the number of shares, strike price, and vesting schedule. Notably, <u>the letter is silent as to the options' expiration date</u>. The absence of a specific expiration date did not immediately trouble Plaintiff because, based on Plaintiff's significant experience in the creation, implementation, adoption and management of option plans as a CEO of several large operating companies, he knew that the industry standard period of time in which stock options may be exercised is ten (10) years. Anything less than a ten (10) years vesting period for stock options would be highly unusual and should have been specifically brought to Plaintiff's attention by Defendant.

12.     The Letter Agreement is signed by Marc Lanser, who was President of Fluoropharma, and Plaintiff.  Plaintiff received a copy of the Letter Agreement on the date of signing.

13.     Though the Letter Agreement states that "I have enclosed forms of a non-disclosure agreement and a nonstatutory stock option agreement that we will ask you to review and sign in connection with your service as a direction…" in fact, Plaintiff received nothing on the date of the signing of the Letter Agreement other than the Letter Agreement itself.

14.     At a date after February 28, 2005, Plaintiff was presented with an undated <u>single page</u> document entitled "Holder's Acceptance," which Plaintiff signed.  A copy of this "Holder's Acceptance" document is attached as **Exhibit 2** and incorporated by this reference.  Defendant never delivered any other pages or documents related to the stock options at issue during the exercise period to Plaintiff, thereby invalidating any additional terms contained therein.

15.     On or about March 6, 2007, Fluoropharma, Inc. granted Plaintiff additional stock options in Fluoropharma in exchange for Plaintiff's further service on Fluoropharma's Board of Directors. Again, this agreement was contained in a letter setting forth its terms ("Second Letter

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

Agreement"). A copy of the Letter Agreement is attached as **Exhibit 3** and is incorporated by this reference. In contrast to the first Letter Agreement, the Second Letter Agreement includes an expiration date. The expiration date of the options granted by the Second Letter Agreement is ten (10) years after the date of grant: March 1, 2017, and in conformity with industry standards and Plaintiff's expectations and understanding.

16.    At the time Plaintiff received the March 6, 2007 stock option grant letter, it confirmed his understanding that all of his stock options were subject to an industry-standard ten (10) year exercise period.

17.    In or about May 11, 2011, Defendant's predecessor-in-interest, Fluoropharma, Inc. completed a reverse merger with Defendant FMI. As a result of a reverse merger, Plaintiff's 200,000 stock options at .20 became 300,000 stock options at .13 with Defendant FMI.

18.    On or about October 21, 2011, Thijs Spoor, CEO of Defendant, contacted Plaintiff by email to discuss his shares and options. A copy of this email is attached as **Exhibit 4**. In reply the same day, Plaintiff requested a summary of his shares and options to be sent by email. A copy of this email is attached **Exhibit 5**.

19.    After receiving no response from Defendant to his request for a summary of his shares and options in Defendant, Plaintiff emailed Mr. Spoor on December 27, 2011, reiterating his request for an email summary of his shares and options in Defendant. A copy of this email is attached as **Exhibit 6**.

20.    Again after receiving no response from Defendant to his two requests for a summary of his shares and options in Defendant, Plaintiff emailed Mr. Spoor on January 13, 2012, making a third request for information about his shares and options in Defendant. A copy of this email is attached as **Exhibit 7**.

21.    Again after receiving no response from Defendant to his three requests for a summary of his shares and options in Defendant, Plaintiff emailed Mr. Spoor on June 1, 2012, making a fourth request for information about his shares and options in Defendant. A copy of this email is attached as **Exhibit 8**.

22.    On June 6, 2012, Mr. Spoor finally responded to Plaintiff's repeated demands for

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

1   information about his shares and options in Defendant by forwarding an undated email from

2   Defendant's Controller, Tamara Rhein, which stated:

3       Todd has 30,000 options at $.95. **300,000 options expired on 2/28/12.** He has

4       no common stock in his name. (Emphasis added)

5   A copy of this email is attached as **Exhibit 9**.

6       23.     Shocked at Defendant's assertion that his options had suddenly and without

7   warning expired, Plaintiff, through counsel, sent Defendant a letter demanding that his options

8   be reinstated.  Defendant rejected Plaintiff's demand and instead claimed that, as a result of an

9   alleged expiration date in a "Non-Qualified Stock Option Agreement" (which Plaintiff had never

10  seen and which it now appears was intentionally withheld from him) Plaintiff's options (His

11  compensation for years of service on Defendant's Board of Directors) had expired.

12

13

14                          **First Claim for Relief**

15                      **Breach of Written Contract**

16                      **(Against All Defendants)**

17      24.     Plaintiff incorporates by this reference each of the above material allegations as

18  though set forth in full at this point.

19      25.     At all relevant times the February 28, 2005 Letter Agreement was in effect and

20  covered Plaintiff's rights and benefits with regard to the options to purchase 300,000 shares of

21  stock.

22      26.     By signing the written Letter Agreement, Plaintiff and Defendant formed a binding

23  agreement, whereby Plaintiff agreed to and did in fact exchange four years of services on

24  Fluoropharma's Board of Directors, in exchange for stock options. Plaintiff fully performed all

25  conditions required of him under the Letter Agreement through his service on the Board of

26  Directors.    Plaintiff's services included actively participating in the management of

27  Flouropharma, Inc., attending board of director meetings, investor conferences, and accepting

28  fiduciary duties for each and every decision and act made on behalf of Defendant.

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

27.     The terms of the Letter Agreement are contained entirely in the letter itself, and do not include an expiration date.  Thus, the options expire ten (10) years from the date of grant, according to the industry standard and the course of dealings between Plaintiff and Defendant.

28.     On or about June 6, 2012, Defendant anticipatorily breached the Letter Agreement by claiming that Plaintiff's 300,000 options expired on February 28, 2012. By claiming that Plaintiff's options have "expired," Defendant has unequivocally indicated that it does not intend to abide by the terms of the Letter Agreement and allow Plaintiff to exercise his options.

29.     Since June 6, 2012, Defendant has refused to allow Plaintiff to exercise the stock options. In refusing to allow Plaintiff to purchase the shares, Defendant has actually breached the Letter Agreement.

30.     As a direct, proximate, and legal result of the breach of the written Letter Agreement, Plaintiff suffered a loss of approximately $325,200.

## Second Claim for Relief

### Breach of Implied Covenant of Good Faith and Fair Dealing

#### (Against All Defendants)

31.     Plaintiff hereby incorporates by this reference each of the foregoing allegations as though set forth in full at this point.

32.     The agreement contains by nature of the agreement and by operation of law, an implied covenant of good faith and fair dealing, that no party to the agreement will take any action or fail to take any action which would deprive or jeopardize the rights or benefits of the other party under the agreement.

33.     Defendant had obligations under the agreement, and under California law, to, inter alia:

a.     Provide full and accurate material details to the agreement, including the expiration period of the stock options,

b.     Provide Plaintiff with the additional documents the Letter Agreement contemplates that Defendant will provide to Plaintiff, and which Defendant now

claims include an expiration date,

 c. Promptly respond to Plaintiff's inquiries concerning the particulars of his stock options, particularly considering the impending alleged expiration of the options and their large value,

 d. Comply with the terms of the agreement, which do not include an expiration date,

 e. Allow Plaintiff to exercise the stock options in accordance with the terms of the Letter Agreement

 f. Not compel Plaintiff to institute litigation to recover all benefits due Plaintiff under the agreement.

34. Defendant has breached the implied covenant of good faith and fair dealing by acting in a manner designed to trick and deceive Plaintiff, to deprive him of the benefits of the Letter Agreement and specifically by willfully and in bad faith:

 a. Intentionally withholding documents from Plaintiff and then using those documents to deny Plaintiff his benefits under the Letter Agreement,

 b. Requesting Plaintiff sign a holder's acceptance without providing him the documents to which it refers,

 c. Failing to disclose to Plaintiff the fact that Defendant allegedly changed the industry standard exercise period to seven (7) instead of ten (10) years, despite the fact that this change was material, was known only to Defendant, and seriously affected Plaintiff's interests,

 d. Ignoring Plaintiff's multiple requests for information regarding his options in the months immediately predating the alleged date of expiration and only disclosing that alleged expiration _after_ Plaintiff's options had allegedly expired,

 e. Compelling Plaintiff to institute litigation to recover benefits to which it is entitled under the agreement.

 f. Unreasonably interpreting the agreement in a manner calculated to deny benefits due under the agreement.

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

35.     Plaintiff is further informed and believes, and thereon alleges that Defendant has breached the implied covenant of good faith and fair dealing through other wrongful conduct not yet fully ascertained, according to proof at trial.

36.     As a legal result of the aforementioned wrongful conduct of Defendant, Plaintiff has suffered general, special, consequential and incidental damages, according to proof at trial.

<u>**Third Claim for Relief**</u>

**10b-5 Securities Fraud**

***(Against All Defendants)***

37.     Plaintiff hereby incorporates by this reference each of the foregoing allegations as though set forth in full at this point.

38.     By offering Plaintiff stock options in exchange for his service on its Board of Directors, Defendant engaged in the sale of securities under the Securities Exchange Act.

39.     In violation of 17 C.F.R. § 240.10b-5, Defendant omitted material facts, including the expiration period, in its sale of stock options to Plaintiff, which were necessary to not make the sale misleading.  The industry standard exercise period for stock options is 10 years.  Based on this standard, Plaintiff believed that his options would expire ten years from the date of vesting.  Defendant knew that ten years was the standard exercise period for stock options, knew that Plaintiff would (Defendant now alleges wrongfully) assume that the exercise period for his options was ten years, and yet did not disclose the fact that it had hidden an abnormally short expiration date in documents which it did not provide to Plaintiff.  Defendant thereby made the sale of Plaintiff's options misleading.

40.     Defendant furthered this deception when it executed the Second Letter Agreement, which included an industry standard ten year exercise period, thereby reassuring Plaintiff.

41.     Plaintiff relied on the omitted fact to his detriment.  Plaintiff at all relevant times believed the 300,000 options granted by the Letter Agreement would not expire until 2015.  He therefor did not exercise those options prior to February 2012 (when Defendant now claims they expired).

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

42.     As a legal result of his reliance, Plaintiff has suffered general damages in the amount of approximately $325,200, additional amounts according to proof at trial.

43.     Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, oppression and fraud, and in conscious disregard of Plaintiff's rights. Defendant intended that Plaintiff would be deceived into believing that his options would not expire for ten years and would therefore not exercise those options. Plaintiff is thus entitled to recover punitive and exemplary damages from Defendant in an amount according to proof at trial.

### Fourth Claim for Relief

### Constructive Fraud

### (Against All Defendants)

44.     Plaintiff hereby incorporates by this reference each of the foregoing allegations as though set forth in full at this point.

45.     At all relevant times, including during Plaintiff's service on Fluoropharma's Board of Directors, Defendant, and its attendant Directors and Officers, were in a fiduciary relationship with Plaintiff, and owed him a fiduciary duty to inform.

46.     By omitting the stock option expiration date from the letter agreement, failing to deliver the non-qualified agreement, and failing to notify Plaintiff of the alleged expiration date in the non-qualified agreement, Defendant breached its fiduciary duty.

47.     As a legal result, Plaintiff has suffered general damages in the amount of approximately $325,200, additional amounts according to proof at trial.

48.     Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, oppression and fraud, and in conscious disregard of Plaintiff's rights. Defendant intended that Plaintiff would be deceived into believing that his options would not expire for ten years and would therefore not exercise those options. Plaintiff is thus entitled to recover punitive and exemplary damages from Defendant in an amount according to proof at

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

1 trial.

### Fifth Claim for Relief

### Conversion

### *(Against All Defendants)*

49.     Plaintiff hereby incorporates by this reference each of the foregoing allegations as though set forth in full at this point.

50.     By the acts alleged above, Defendant has wrongfully exercised control over personal property that belongs to Plaintiff.

51.     At all relevant times, Plaintiff was and still is the lawful and rightful owner of the disputed 325,200 stock options.

52.     Defendant has limited Plaintiff's ability to control his property by limiting Plaintiff's ability to exercise the property.

53.     By the acts alleged above Defendant intentionally took possession of Plaintiff's personal property and intentionally prevented Plaintiff from having access to its own personal property for a significant period of time.

54.     At no time did Plaintiff consent to Defendant's wrongful and intentional acts.

55.     As a legal result, Plaintiff has suffered general damages in the amount of approximately $325,200, additional amounts according to proof at trial.

56.     Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, oppression and fraud, and in conscious disregard of Plaintiff's rights.  Plaintiff is thus entitled to recover punitive and exemplary damages from Defendant in an amount according to proof at trial.

**WHEREFORE,** Plaintiff prays for judgment as follows:

1.      For damages in the amount of at least $325,200

2.      For punitive and exemplary damages in an amount to be proven at trial.

3.      For prejudgment interest at the maximum legal rate.

4.      Costs of suit herein incurred.

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

5.      For any other and further relief as the court may deem necessary and proper.

Respectfully Submitted,

DATED:        June 27, 2013                         **WIRTZ LAW APC**

By: _____
Richard M. Wirtz
Christopher M. Young
Attorneys for Plaintiff TODD
NELSON

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009 / fax 858.259.6008

**COMPLAINT FOR DAMAGES**
11