UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TODD NELSON, an individual,<br><br>   Plaintiff,<br><br>vs.<br><br>FLUOROPHARMA MEDICAL, INC., a Nevada Corporation; and DOES 1 through 10, inclusive;<br><br>   Defendants. | 2:13-cv-1152-JAD-CWH<br><br>**Order Granting FluoroPharma Medical Inc.'s Motion for Summary Judgment [ECF 51] and Overruling Todd Nelson's Objections to Fluoropharma's Objections [ECF 64]** |

   Todd Nelson was awarded stock options as compensation for serving on FluoroPharma, Inc.'s board of directors from 2004 through 2009. FluoroPharma proposed that the stock options would vest on an annual basis and expire on February 28, 201**2**. Although Nelson subsequently revised the vesting schedule to a monthly one and signed the agreement, he left the expiration date unchanged and never exercised the stock options before that date.

   In an effort to revive this expired asset, Nelson sues FluoroPharma, claiming that his stock options were subject to an industry-standard ten-year exercise period with a February 28, 201**5**, expiration date, which FluoroPharma breached when it told Nelson in June 2012 that his stock options had expired and could no longer be exercised. Alternatively, he claims that if the stock options expired in 2012, FluoroPharma breached the covenant of good faith and fair dealing implied in his stock-option agreement and committed constructive fraud by failing to warn him of the expiration date before it arrived. Because I find there is no genuine issue of material fact that Nelson's stock options expired in February 2012 based on express and unambiguous language in the parties' agreement, I grant FluoroPharma's motion and enter summary judgment in its favor on all of Nelson's claims.

## Background

Todd Nelson is an experienced investor and corporate executive.[1] In 2005, he co-founded FluoroPharma, Inc. and agreed—in exchange for 200,000 stock options—to serve on FluoroPharma's board of directors.[2] The terms of Nelson's agreement with FluoroPharma were memorialized in numerous documents, which underwent multiple revisions.

### A.   The 2005 Agreement

On February 28, 2005, Nelson received an email from FluoroPharma's in-house counsel, James Belanger, stating:

> Todd: At the request of Marc Lanser[, FluoroPharma's President and Chief Executive Officer], I am attaching the documents relating to your service as a director of FluoroPharma. You will see that the current strike price has been set at $.20. It is not clear whether that is the fair market value or not, and the expense of getting a valuation opinion would likely be significant.[3]

A letter from Lanser and a draft "Non-Qualified Stock Option Agreement" were among the email's attachments.[4] Lanser's letter thanked Nelson for "express[ing] an interest in serving" on FluoroPharma's board, offered him a position as a director, and outlined the terms of his compensation.[5] In exchange for his service as a director, Nelson would receive 200,000 stock options in five annual installments: 30,000 stock options would vest on February 28, 2005; 50,000 stock options would vest on February 28, 2006, February 28, 2007, and February 28, 2008; and 20,000 stock options would vest on February 28, 2009.[6]

Lanser's letter also stated that the terms of Nelson's compensation were subject to

---

[1] ECF 63 at 2.

[2] ECF 65 at ¶ 2; ECF 58 at Ex. F.

[3] ECF 58 at Ex. B.

[4] The email also included a non-disclosure agreement and an equity incentive plan. These documents are not material to the parties' dispute.

[5] ECF 58 at Ex. B.

[6] *Id.*

negotiation: if Nelson had "any questions" or "believe[d] that changes should be made" to the documents, he could contact Lanser or Belanger.[7]  The draft stock-option agreement attached to Belanger's email contained an identical vesting schedule: it stated that Nelson would receive 200,000 stock options in five annual installments.[8]  The agreement also established a procedure for Nelson to exercise his stock options:[9] he was required to (1) pay the company "in full," (2) provide the company with written notice specifying the number of shares to be purchased and the purchase price, and (3) act by "**February 28, 2012** (the **'Expiration Date'**)."[10]

Nelson accepted Lanser's invitation to revise the terms of the agreement.  On March 4, 2005, Belanger sent Nelson a second email regarding revisions that Nelson had made to the stock-option agreement:

> Todd: I have attached the documents as you revised them, with some additional changes to remove an inconsistency and to make clear the monthly vesting amount. I have also attached clean copies for signature if the changes are acceptable. Please give me a call if you have any questions. Thanks. Best regards, Jim.[11]

The attachments to Belanger's second email contained redlined revisions to Lanser's letter and the stock-option agreement.[12]  In both documents, the annual vesting schedule was replaced with a monthly vesting schedule.[13]  Under the terms of the revised agreement, Nelson would receive 50,000 stock options on February 28, 2005, and 3,125 stock options for each additional month of service on FluoroPharma's board of directors.[14]  Importantly, neither the expiration date nor the

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* (emphasis original).

[11] ECF 58 at Ex. C.

[12] *Id.*

[13] *Id.*

[14] *Id.*

procedure for exercising the options was changed.[15]

Lanser executed the revised letter[16] and the revised stock-option agreement (hereinafter, "the 2005 Agreement") in his capacity as FluoroPharma's President and CEO.[17]  Nelson also executed both documents.  He signed the letter beneath the words "ACCEPTED AND AGREED TO,"[18] and he signed the 2005 Agreement on the eighth and final page, which was entitled "HOLDER'S ACCEPTANCE."[19]  Both documents are dated February 28, 2005.[20]

**B.    The 2007 Agreement**

Two years later, on March 6, 2007, FluoroPharma granted Nelson additional stock options in exchange for Nelson's continued service on the board of directors.[21]  A letter from FluoroPharma's new CEO outlined the terms of the second agreement (hereinafter, "the 2007 Agreement"):

> FluoroPharma will compensate you for your service as a director at the rate of $500 per month, with payments commencing as of March 1, 2007, and by granting you non-qualified options to purchase 10,000 shares of common stock of FluoroPharma, Inc., at a price of $1.43 per share, such options to vest as upon your first day of service as a director, and to grant you an additional non-qualified options to purchase 20,000 shares thereafter as to 10,000 shares on each of March 1, 2008, and March 1, 2009, at an exercise price of $1.43 per share, provided that you are continuing to serve as a director on each such date.  Your options will be exercisable as soon as they vest, but will expire on March 1, 2017.[22]

**C.    Post-agreement communications between Nelson and FluoroPharma**

Approximately four years passed without Nelson exercising any of his stock options or

---

[15] *Id.*

[16] ECF 1-2 at 3.

[17] ECF 58 at Ex. F.

[18] ECF 1-2 at 3.

[19] ECF 58 at Ex. F.

[20] ECF 1-2 at 3; ECF 58 at Ex. F.

[21] ECF 65 at Ex. 9.

[22] *Id.* at Ex. 8.

contacting FluoroPharma about his contractual rights. On October 21, 2011, FluoroPharma's new CEO, Thijs Spoor, contacted Nelson: "Hi Todd, We haven't met yet but I'd like to see if you have any time for a quick update on FluoroPharma and to walk you through your options and shares. Are there any good times for you or alternatively please fee free to give me a call. . . ."[23] Nelson replied the same day: "Thanks for the email. Is there any way to send to me in an email a summary? If not, I'll try to give you a ring next week."[24]

Spoor did not immediately respond; there is no evidence in the record that Nelson tried to give FluoroPharma that ring. On December 27, 2011, Nelson sent a follow-up email: "Hi Thijs, I hope you are having a good holiday. I would like to spend a few minutes understanding . . . my options. . . . If you could just email me with the original number of options and walk me through to what I own now that would be great."[25] Nelson sent a second follow-up email on January 13, 2012,[26] and a third on June 1, 2012.[27]

On June 6, 2012, Spoor responded: "Hi Todd, Tamara is the main contact for this information; my apologies as I thought this had been sent to you."[28] A message from Tamara Rhein, who was FluoroPharma's controller, was included below.[29] It read, "Todd has 30,000 options at $.95. 300,000 options expired on 2/28/12. He has no common stock in his name."[30] Nelson claims he was "shocked."[31]

---

[23] ECF 1 at Ex. 4.

[24] *Id.* at Ex. 5.

[25] *Id.* at Ex. 6.

[26] *Id.* at Ex. 7.

[27] *Id.* at Ex. 8.

[28] *Id.* at Ex. 9.

[29] *Id.*

[30] *Id.*

[31] ECF 1 at ¶ 23.

**Procedural History**

Nelson filed this action on June 28, 2013, pleading two alternative theories of liability.[32] First, he alleges that his stock options granted by the 2005 Agreement were subject to an industry-standard ten-year exercise period with a February 28, 2015, expiration date. Based on that extended date, FluoroPharma breached the 2005 Agreement and converted Nelson's stock options by refusing to allow him to exercise his options in June 2012.[33] Nelson alternatively alleges that, if the stock options were subject to a seven-year exercise period and February 28, 2012, expiration date, FluoroPharma violated the implied covenant of good faith and fair dealing in the 2005 Agreement and committed constructive fraud by failing advise him of the 2012 expiration date before it passed.[34]

To provide factual support for these allegations, Nelson includes two documents as exhibits to his complaint. The first is a copy of Lanser's February 28, 2005, letter to Nelson. The letter is signed by Lanser and establishes a monthly vesting schedule for Nelson's stock options; it is silent with regard to the exercise period and expiration date.[35] The second document is a single page entitled "HOLDER'S ACCEPTANCE."[36] It is signed by Nelson and is also silent with regard to the exercise period and expiration date.[37]

During the course of discovery, Nelson produced a copy of Belanger's March 4, 2005, email and its attachments. The email and attachments show that Nelson replaced the annual vesting schedule in the initial draft of the 2005 Agreement with a monthly vesting schedule.[38] The redlined

---

[32] *See generally* ECF 1; ECF 63 at 1.  Nelson also pled a claim for Securities Fraud under 17 C.F.R. § 240.10b-5.  ECF 1 at 8.  I dismissed this claim on April 1, 2014.  ECF 32.

[33] ECF 63 at 1.

[34] *Id.* at 2.

[35] ECF 1 at Ex. 1.

[36] ECF 1 at Ex. 2.

[37] *Id.*

[38] *See* ECF 58 at Ex. C.

agreement and the clean copy attached by Belanger for Nelson's signature stated that Nelson's stock options are subject to a seven-year exercise period expiring on February 28, 2012.[39]

FluoroPharma's counsel provided an identical copy of the 2005 Agreement.[40] The only difference between the copy produced by Nelson and the copy produced by FluoroPharma's counsel is that the latter is signed by both Nelson and Lanser.[41] The signed Holder's Acceptance attached to the executed copy of the 2005 Agreement produced by FluoroPharma's counsel is identical to the signed Holder's Acceptance that Nelson attached to his complaint.[42]

Discovery also revealed a version of the 2005 Agreement with a February 28, 201**5**, expiration date. It is signed by Lanser, contains an annual vesting schedule and is not signed by Nelson.[43] The discovery of these documents prompted FluoroPharma's motion for summary judgment. Nelson opposes the request and offers various objections to FluoroPharma's declarations.[44]

**Legal Standard**

The legal standard governing FluoroPharma's motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[45] An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.[46] A fact is "material" if

---

[39] *Id.*

[40] *Id.* at Ex. F.

[41] *Compare id. with* Ex. C.

[42] *Compare id.* at Ex. F. *with* ECF 1 at Ex. 2.

[43] *Id.* at Ex. H.

[44] ECF 63, 64.

[45] FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[46] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

it could affect the outcome of the case.[47]

When considering a motion for summary judgment, the district court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[48] The purpose of summary judgment is "to isolate and dispose of factually unsupported claims"[49] and to determine whether a case "is so one-sided that one party must prevail as a matter of law."[50] It is not my role to weigh evidence or make credibility determinations.[51] If reasonable minds could differ on material facts, summary judgment is inappropriate.[52]

Once the moving party shows that there is no genuine issue as to any material fact, the burden shifts to the nonmoving party, who must "set forth specific facts showing that there is a genuine issue for trial."[53] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; the nonmoving party "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[54] When reviewing the parties' papers, I only consider properly authenticated, admissible evidence.[55]

## Discussion

FluoroPharma is entitled to summary judgment in its favor on all of Nelson's claims. There

---

[47] *Id.* at 248.

[48] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[49] *Celotex Corp.*, 477 U.S. at 323–24.

[50] *Anderson*, 477 U.S. at 252.

[51] *Id.*. at 249, 255.

[52] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[53] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 323.

[54] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[55] FED. R. C. P. 56(c); *Orr*, 285 F.3d at 773–74.

is no genuine issue of material fact that the executed 2005 Agreement states that the options would expire on February 28, 2012. This express language entitles FluoroPharma to judgment as a matter of law on all of Nelson's claims.

**A.   Nelson's evidentiary objections**

My analysis begins with Nelson's five objections to FluoroPharma's declarations in support of its motion for summary judgment.[56] He first contends that Sameer Rastogi's declaration is inadmissible under Federal Rule of Evidence 603 because "it is not subscribed to under oath."[57] The first line of Rastogi's declaration reads, "Sameer Rastogi, affirms under penalties of perjury, as follows . . . ."[58] Because Rule 603 requires "no special verbal formula," this language qualifies as an oath, and Nelson's objection is overruled.[59]

Nelson next objects to portions of Rastogi and Spoor's declarations under Rule 403, which allows me to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A Rule 403 objection serves no purpose at summary judgment.[60] There is no jury that may be mislead and no danger of unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence because Rule 56 limits my gaze to the "material" facts.[61] This objection is overruled.

Nelson's third objection is predicated on Rule 1004 and is also misplaced. He contends that portions of Rastogi and Spoor's declarations should be excluded because "the referenced documents

---

[56] ECF 64.

[57] *Id.* at 1.

[58] ECF 53 at 1.

[59] 27 C. A. WRIGHT & V. J. GOLD, FEDERAL PRACTICE & PROCEDURE: EVIDENCE 2d § 6044 (2007) (citing FED. R. EVID. 603, Advisory Comm. Notes).

[60] *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("Objections on any of these [Rule 403] grounds are simply superfluous in [the summary-judgment] context.").

[61] *See* FED. R. CIV. P. 56(a).

speak for themselves and there is no need for testimony describing their contents to the Court."[62] Rule 1004 does not preclude a witness from testifying to the contents of an original document like those at issue here. Indeed, the objection that a document speaks for itself has no basis in the rules of evidence, and certainly not in Rule 1004, which merely describes the circumstances under which a copy may be admitted instead of an original.[63] This objection is overruled.

Nelson's fourth objection is predicated on Rule 602, which requires that a witness demonstrate that he or she has personal knowledge of a matter before testifying on that matter. The rule also states that "[e]vidence to prove personal knowledge may consist of the witness's own testimony."[64] Both declarants testified that they have personal knowledge of "the facts set forth herein."[65] Spoor explains that his "knowledge of this matter comes from a review of FluoroPharma's records,"[66] and the bulk of his declaration offers information about what is and is not located in FluoroPharma's books and records, or what can be gleaned from those records. Spoor also offers his declaration to authenticate documents he personally received or sent.[67] Rastogi's declaration explains that his "knowledge comes from a review of the record of this matter and a review of the discovery materials exchanged between the parties and third parties,"[68] and Rastogi uses his declaration to authenticate litigation-related communications and discovery materials.[69] The context

---

[62] ECF 64 at 1–2.

[63] *See, e.g., Miller v. Holzmann*, 240 F.R.D. 1, 4 (D. D.C. 2006) (citing James W. McElhaney, *The Cleveland Exception to the Hearsay Rule and Other Courtroom Oddities*, 1 Rev. of Litig. 93, 96–99 (1980)).("It is astonishing that the objection that a document speaks for itself, repeated every day in courtrooms across America, has no support whatsoever in the law of evidence.").

[64] FED. R. EVID. 602.

[65] ECF 52 at ¶¶ 2–3; ECF 53 at ¶¶ 2-3.

[66] ECF 52 at ¶ 3.

[67] *See, e.g.,* ECF 52 at ¶ 6.

[68] ECF 53 at ¶ 3.

[69] *Id.* at ¶¶ 4–11.

and content of the declarations gives me sufficient information to conclude that the declarants have the personal knowledge needed to make these statements. This objection, too, is overruled.

Nelson's final two objections are lodged under Rules 701 and 704. Rule 701 prohibits a lay witness from offering expert opinion, but I do not see any improper lay/expert opinions in either declaration, and Nelson offers no discussion of the basis for his objection. Rule 704 states that "An opinion is not objectionable just because it embraces an ultimate issue." Nelson does not explain how he believes either of these declarations runs afoul of Rule 704. Accordingly, these final objections are also overruled.

**B.    Merits discussion**

    **1.    Breach of contract**

Having addressed Nelson's objections, I now turn to his first claim for relief: that FluoroPharma breached the 2005 Agreement by telling Nelson in June 2012 that his options under the agreement expired on February 28, 2012, and by refusing from that point forward to allow him to exercise those options.[70] I apply Delaware law to Nelson's contract claims because the 2005 Agreement states that "[t]his Option and this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware."[71] To prevail on his breach-of-contract claim, Nelson must satisfy three elements: " first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."[72]

There is no genuine dispute that Nelson's stock options expired on February 28, 2012, under the clear and unequivocal terms of the executed 2005 Agreement. On February 28, 2005, Nelson received a draft offer letter and stock-option agreement.[73] Both documents contained identical

---

[70] ECF 1 at 5–6.

[71] *See* ECF at 58 at 112 (Ex. F, ¶ 13(c)).

[72] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citing *Winston v. Mandor*, 710 A.2d 835, 840 (Del. Ch.1997)).

[73] *See* ECF 58 at Ex. B.

vesting schedules, and the stock-option agreement unequivocally stated that Nelson's options would expire "on **February 28, 2012** (the **'Expiration Date'**)."[74]  On March 4, 2005, Nelson received revised drafts of the letter and stock-option agreement.[75]  Both documents contained identical vesting schedules.[76]  The revised stock-option agreement also contained an expiration date that was identical to the original expiration date: "**February 28, 2012** (the **'Expiration Date'**)."[77]

The only evidence supporting Nelson's allegation that his stock options were subject to a ten-year exercise period are (1) his own testimony and (2) a draft version of the stock-option agreement.[78]  There is no question that this version was simply a draft.  It contains the annual vesting schedule that Nelson removed before the final agreement[79]; it is not signed by Nelson; and it was not found in FluoroPharma's records or the records of its former counsel, James Belanger.[80]  Nelson argues that the existence of this document defeats summary judgment because Flouropharma cannot explain its existence.[81]

But with a fully-executed 2005 Agreement and an email chain that corroborates the evolutionary course of edits that resulted in a contract with a monthly vesting schedule and a 2012 expiration date, that draft document does nothing to undermine the factual conclusion that the fully executed version of the 2005 Agreement contains a clear, express February 28, 2012, expiration date that FluoroPharma had the contractual right to enforce.  Delaware law holds that, "if the relevant

---

[74] *Id.* (emphasis original).

[75] *See* ECF 58 at Ex. C.

[76] *Id.*

[77] *Id.* (emphasis original).

[78] ECF 58 at Ex. H.

[79] *See id*.  A fully executed Consent in Lieu of Meeting of FluoroPharma's Board of Directors dated March 4, 2005, also demonstrates that the final agreement did not contain the annual vesting schedule.  *See* ECF 53 at ¶ 10 (citing ECF 58 at Ex. I).

[80] *See* ECF 53 at ¶¶ 5–6, 9.

[81] ECF 63 at 12–13.

contract language is clear and unambiguous, courts must give the language its plain meaning."[82]  The 2012 expiration date in this contract is clear and unambiguous, and FluoroPharma merely enforced it when refusing in June 2012 to allow Nelson to belatedly exercise his expired stock options.  On this record, Nelson cannot make out a breach-of-contract claim against FluoroPharma, and FluoroPharma is entitled to summary judgment in its favor on Nelson's first claim for relief.

### 2.     Breach of the implied covenant of good faith and fair dealing

In his second claim for relief, Nelson contends that, if his stock options expired on February 28, 2012, FluoroPharma violated the implied covenant of good faith and fair dealing in the 2005 Agreement by failing to advise Nelson of the expiration date before it arrived and by refusing to allow him belatedly to exercise his stock options.[83]  Under Delaware law, the implied covenant of good faith and fair dealing is not automatically applied to all contracts; I must first "determine whether there is a gap [in the stock-option agreement] that needs to be filled.[84]  My role is to "decide[] whether the language of the contract expressly covers a particular issue."[85]  If the contract covers the issue in controversy, then the implied covenant does not apply.[86]  "[B]ecause the implied covenant is, by definition, implied, and because it protects the spirit of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue."[87]

There is no gap in the 2005 Agreement for Nelson's proposed 10-year expiration date to fill. The agreement contains an express seven-year exercise period, an expiration date, and a procedure for exercising Nelson's stock options.[88]  Additionally, there is no dispute that Nelson was, at some

---

[82] *Phillips Home Builders, Inc. v. Travelers Ins. Co.*, 700 A.2d 127, 129 (Del. 1997).

[83] ECF 1 at ¶ 33–34.

[84] *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 183 (Del. Ch. 2014).

[85] *Id.*

[86] *Id.*

[87] *Id.* (citation omitted).

[88] ECF 58 at Ex. F.

point, aware of these provisions: he received, reviewed, revised, and signed the operative agreement, which states—in bold—that his stock options expire on "**February 28, 2012** (the **'Expiration Date'**)."[89]

Nor can I conclude that the parties intended to include in this agreement an obligation on FluoroPharma's part to warn Nelson that his stock-option expiration date was approaching. "An interpreting court cannot use an implied covenant to re-write the agreement between the parties, and 'should be most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it.'"[90] Had the parties intended to include such a duty, they easily could have written one into the exercise procedures expressly contained in paragraph 3. Well-established contract-interpretation tenets prevent me from now writing it in for them more than a decade later.

Nelson's plea that "compelling fairness" requires me to imply new terms in this contract and extend his negotiated exercise period is belied by these facts and unwarranted under controlling law. Though unfortunate for Nelson, there is nothing unfair about his situation. The record shows that Nelson agreed to an express seven-year exercise period, undertook the responsibility of exercising his rights before February 28, 2012, and did not contact FluoroPharma until after FluoroPharma contacted him to ensure that he understood his rights.[91] FluoroPharma did not, as Nelson asserts, deprive him of the benefits of the bargain.[92] Nelson simply forgot when and how to exercise his rights, and he has only himself to blame for that. Nelson cannot prevail on his breach-of-the-implied-covenant claim as a matter of fact and law, and summary judgment is now merited.

---

[89] *See id.* (emphasis original); ECF 58 at Ex. C (emphasis original).

[90] *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 897 (Del. 2015), as revised (Mar. 27, 2015) (quoting *Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1035 (Del. Ch. 2006)).

[91] *See* ECF 1 at Ex. 4; *see also Allen*, 113 A.3d at 183 (stating that the implied covenant of good faith and fair dealing "cannot be invoked where the contract itself expressly covers the subject at issue.").

[92] *See* ECF 63 at 15.

### 3. Constructive fraud

In his fourth claim for relief, Nelson alleges that the defendants committed constructive fraud "[b]y omitting the stock option expiration date from" Lanser's letter, "failing to deliver" the 2005 Agreement, and "failing to notify [him] of the alleged expiration date."[93] Constructive fraud "is characterized by a breach of duty arising out of a fiduciary or confidential relationship."[94] A fiduciary or confidential relationship exists "when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."[95]

Certainly, a corporate director like Nelson would owe a fiduciary to the corporation, FluoroPharma, which he represented from 2005–2009.[96] But Nelson offers no authority to suggest that the converse is also true: that FluoroPharma owed Nelson a fiduciary duty—more than two years after his service on the board ended—to notify him of the impending expiration of his stock options. Because Nelson has not pointed to any evidence or legal authority to support the existence of such a relationship, I cannot infer that Nelson "repose[d] a special confidence in" FluoroPharma and its representatives that would give rise to the fiduciary or special relationship necessary to establish this claim.[97] Thus, FluoroPharma is entitled to summary judgment in its favor on Nelson's constructive-fraud claim, too.

### 4. Conversion

Nelson's fifth and final claim is for conversion. He alleges that he "was and still is the lawful

---

[93] ECF 1 at 9.

[94] *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982).

[95] *Id.*; *see also Exec. Mgmt. Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 477 (Nev. 1998) ("Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or to violate confidence ... [and] may arise where there has been a breach of duty arising out of a fiduciary or confidential matter.").

[96] *Horwitz v. Sw. Forest Indus., Inc.*, 604 F. Supp. 1130, 1134 (D. Nev. 1985) (citing *Foster v. Arata*, 325 P.2d 759, 765 (Nev. 1958)); NEV. REV. STAT. § 78.138 (West).

[97] *Long*, 639 P.2d at 530.

and rightful owner of" the stock options granted to him in the 2005 Agreement and that the defendants "took possession of" those stock options and "prevented [Nelson] from having access to" them "for a significant period of time."[98]  In Nevada, a party claiming conversion must demonstrate "the distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights."[99]  Assuming that one can convert intangible property like stock options, Nelson cannot make out a viable claim for conversion on this undisputed record.  Because the 2005 Agreement essentially gave FluoroPharma the right to refuse Nelson's efforts to exercise his stock options after the February 28, 2012, expiration date, FluoroPharma's denial of Nelson's untimely requests was not "inconsistent with" Nelson's rights; it was entirely consistent with the express terms of the parties' 2005 Agreement because Nelson had let his rights expire.  Accordingly, FluoroPharma is also entitled to summary judgment in its favor on Nelson's fifth and final claim for conversion.[100]

### Conclusion

Accordingly, with good cause appearing and no reason for delay, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Todd Nelson's Objections [**ECF 64**] are **OVERRULED** and FluoroPharma Medical, Inc.'s Motion for Summary Judgment [**ECF 51**] is **GRANTED**.  The Clerk of Court is directed to enter judgment in favor of the defendant on all remaining claims and close this case.

Dated this 4th day of January, 2016

_____
Jennifer A. Dorsey
United States District Judge

---

[98] ECF 1 at 10.

[99] *Scaffidi v. United Nissan*, 425 F. Supp. 2d 1159, 1168 (D. Nev. 2005) (citing *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958)).

[100] *Custom Teleconnect, Inc.*, 254 F. Supp. 2d at 1182.